## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

---

JOHN 1 DOE, by next friend, JOHN 1NF DOE,
JOHN 2 DOE, by next friend, JANE 2NF DOE,
JOHN 3 DOE, by next friend, JOHN 3NF DOE,
JOHN 4 DOE, by next friend, JANE 4NF DOE,
JOHN 5 DOE, by next friend, JOHN 5NF DOE, and
JOHN 6 DOE, by next friend, JOHN 6NF DOE.

No. _____

          Plaintiffs,

v.

Hon. _____

HOLT PUBLIC SCHOOLS,

**Complaint and Jury Demand**

          Defendant.

---

Stephen H. Sinas (P71039)
Steven H. Weston (P38668)
Jonathon K. Homa (P81518)
**The Sinas Dramis Law Firm**
Attorneys for Plaintiffs
3380 Pine Tree Road
Lansing, MI 48911
Phone: (517) 394-7500
Fax: (517) 394-7510
steveandstaff@sinasdramis.com
jonandstaff@sinasdramis.com
steveweston@sinasdramis.com

---

## COMPLAINT
## AND JURY DEMAND

**NOW COME** Plaintiffs, by and through their attorneys, *the Sinas Dramis Law Firm*, and for their *Complaint* against Defendant Holt Public Schools, state as follows:

### Introduction

1.     Plaintiffs bring this action against Defendant Holt Public Schools for its violations of Plaintiffs' rights arising from ongoing pervasive acts of repeated child sex abuse by teacher Patrick Daley over the course of several years, while Patrick Daley was employed at Washington Woods Elementary School.[1]

### Parties

2.     Plaintiff John 1 Doe was a Washington Woods student. He is a minor and a resident of Ingham County, Michigan.

3.     John 1NF Doe is John 1 Doe's father and is a resident of Ingham County, Michigan. John 1NF Doe is a general guardian under Federal Rule of Civil Procedure 17(c) and will serve as John 1 Doe's next friend for purposes of this lawsuit.

4.     Plaintiff John 2 Doe was a Washington Woods student. He is a minor and a resident of Ingham County, Michigan.

---

[1] Plaintiffs have contemporaneously filed a Motion to Proceed Under Pseudonym to protect their identity and privacy as their claims involve sexual assault, harassment, and other conduct which occurred when Plaintiffs were minors and is considered extremely personal in nature.

5.      Jane 2NF Doe is John 2 Doe's mother and is a resident of Ingham County, Michigan. Jane 2NF Doe is a general guardian under Federal Rule of Civil Procedure 17(c) and will serve as John 2 Doe's next friend for purposes of this lawsuit.

6.      Plaintiff John 3 Doe was a Washington Woods student. He is a minor and a resident of Ingham County, Michigan.

7.      John 3NF Doe is John 3 Doe's father and is a resident of Ingham County, Michigan. John 3NF Doe is a general guardian under Federal Rule of Civil Procedure 17(c) and will serve as John 3 Doe's next friend for purposes of this lawsuit.

8.      Plaintiff John 4 Doe was a Washington Woods student. He is a minor and a resident of Ingham County, Michigan.

9.      Jane 4NF Doe is John 4 Doe's mother and is a resident of Ingham County, Michigan. Jane 4NF Doe is a general guardian under Federal Rule of Civil Procedure 17(c) and will serve as John 4 Doe's next friend for purposes of this lawsuit.

10.      Plaintiff John 5 Doe was a Washington Woods student. He is a minor and a resident of Ingham County, Michigan.

11.      John 5NF Doe is John 5 Doe's father and is a resident of Ingham County, Michigan. John 5NF Doe is a general guardian under Federal Rule of Civil

Procedure 17(c) and will serve as John 5 Doe's next friend for purposes of this lawsuit.

12.     Plaintiff John 6 Doe was a Washington Woods student. He is a minor and a resident of Ingham County, Michigan.

13.     John 6NF Doe is John 6 Doe's father and is a resident of Ingham County, Michigan. John 6NF Doe is a general guardian under Federal Rule of Civil Procedure 17(c) and will serve as John 6 Doe's next friend for purposes of this lawsuit.

14.     Defendant Holt Public Schools is a school district that receives federal funds within the meaning of 20 U.S.C. § 1681(a). The District geographically lies within Ingham County, Michigan. Washington Woods is a school that is part of the District.

## Jurisdiction

15.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this litigation involves matters of federal law, specifically claims for deprivation of civil rights under 42 U.S.C. § 1983 and the U.S. Constitution.

16.     This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1343(a)(3) & (4) because this litigation involves claims for deprivation of civil rights under 42 U.S.C. § 1983.

17.     Plaintiffs further invoke the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

18.     Venue in this federal district is proper pursuant to 28 U.S.C. § 1391, as all of the relevant facts giving rise to this case and damages sustained by Plaintiffs occurred in this district.

## General Allegations

19.     Patrick Daley was a fifth-grade teacher at Cole Academy in Lansing, Michigan for five years.

20.     Daley sexually harassed male students at Cole Academy by, among other things, staring at them while they showered on field trips and inappropriately touching at least one boy.

21.     Daley was let go from Cole Academy prior to being hired as a teacher by Defendant Holt Public Schools.

22.     Defendant Holt Public Schools then hired Daley, who began teaching fifth grade at Washington Woods in Fall 2012.

23.     Washington Woods is a public middle school that offers classes for students in the fifth and sixth grades.

24.     At all times relevant, Daley was known to keep his classroom door locked while class was in session. Upon information and belief, no other teacher at Washington Woods did this.

25.     At all times relevant, Daley also obscured and/or prevented view from the school's hallways into his classroom by covering the room's internal windows with posters and signs.

26.     Throughout his employment at Washington Woods, Daley routinely and systematically sexually abused and harassed male students throughout the school building, and often in his classroom.

27.     In Spring 2013 or 2014, not long after Daley began teaching at Washington Woods, a fellow teacher, Keith Allen, reported to Rick Couturier, then the Principal of Washington Woods, that Daley had intentionally exposed his boxer shorts to students during class.

28.     In approximately April 2015, Frank Sutterlin, who replaced Mr. Couturier as the Principal for Washington Woods, discovered Daley changing his clothes in the boys' locker room in the presence of male students. Principal Sutterlin instructed Daley to change in his classroom, and not in the locker room, to prevent complaints or accusations of sexual misconduct being made against Daley. At that time, Sutterlin expressed his obvious concerns, yet did nothing in response to protect students at Washington Woods.

29.    In Spring 2015 or Fall 2016, Principal Sutterlin entered the Washington Woods computer lab and observed Daley crouched down behind a student, with his hand resting on the open area of the chair by the student's buttocks. When Daley realized that Principal Sutterlin was observing him, he quickly stood up and removed his hand from the student. Yet again, Sutterlin took no meaningful action in response to the concerning conduct.

30.    In 2017, Principal Sutterlin asked Mr. Allen to keep an eye on the boys' locker room. Mr. Allen discovered that Daley again was in the locker room while students were changing their clothes when Daley had no reason to be there. Mr. Allen reported this to Defendant Holt Public Schools' administration.

31.    Mr. Allen also observed that Daley allowed boys to hang on him and hug him for extended periods of time, and that Daley approached male students and hugged them without being asked. Mr. Allen saw that Daley engaged in this behavior only with male students, and not female students. He regarded Daley's conduct as inappropriate for a teacher.

32.    In 2016 or 2017, a substitute teacher, Cindy Fohey, voiced concern about Daley's physical contact with boys to a teacher, Rob Buckley. On more than one occasion, she observed Daley allowing boys to lean against and rest their buttocks on his legs. Daley's physical closeness to male students struck her as "odd."

33.     During the 2016-2017 academic year, a parent volunteer observed Daley acting "flirty" with a male student.

34.     In October 2017, Daley invited a few "favorite" male students to his birthday party at the YMCA. The parent of one student who received the invitation thought this was inappropriate and set off "red flags" for him, but he did not report Daley. Two male students attended the party, and Daley insisted they change and shower with him in the locker room.

35.     During his employment at Washington Woods, Daley sexually assaulted, molested, and harassed students in his classroom on numerous occasions.

36.     Daley similarly abused and harassed other male students at Washington Woods.

37.     Many of these and other students, both male and female, witnessed Daley inappropriately touch male students at school.

38.     At least one male student who observed Daley sexually harass and inappropriately touch multiple boys later told law enforcement that students did not report Daley because they were afraid that the teacher would revoke their privileges, like recess.

39.     Daley's abuse and harassment continued through May 30, 2018, when students directly discussed the abuse of Daley with Principal Sutterlin.

40.     During the time Daley was sexually abusing boys at Washington Woods, many administrators, teachers, staff, and volunteers knew of, observed, and/or reported Daley's inappropriate conduct with respect to male students.

41.     Daley often had male students sit on his lap during class.

42.     Daley touched boys so frequently that students in his classroom, including many of his victims, regarded the abuse as "normal," "usual," or just what Daley did.

43.     Despite all of these reports, observations, and concerns, the Defendant Holt Public Schools did not discipline Daley, did not investigate further, did not interview students regarding Daley's inappropriate contact, and did not increase or implement supervision of Daley.

44.     On January 24, 2018, the Holt Public Schools' Superintendent sent a letter to parents, staff, students, and others in the school community, reporting that Defendant Holt Public Schools was made aware "three students, two from Holt and one from a neighboring school district, have reported through victim impact statements in Ingham County Circuit Court that they were abused by Nassar in our athletic building while meeting him there for treatment."

45.     The Superintendent stated, "my heart was heavy upon learning for the first time that criminal acts of a sexual nature reportedly occurred on our

property. I cannot imagine the pain these young women have endured as a result, and being a father myself, I share the outrage our entire community feels."

46.    He wrote, "I write to reassure our parents, guardians, and students that our District has a strong policy prohibiting any sexual misconduct and violence at any time," and continued: "As educators, we hold ourselves and all of our staff to the highest standards of ethics and propriety, because you entrust your children to us every day. When these expectations are violated, in an unusual case like this, we reach out to the victims and investigate so that we eliminate recurrence and support those who have been victimized."

47.    Within a week after Defendant Holt Public Schools issued the letter concerning the sexual abuse of children on school grounds, Washington Woods paraprofessional Cynthia Burton, who worked with Daley's students in his classroom, observed Daley touch intimate areas of boys' bodies.

48.    On January 31, 2018, Ms. Burton reported Daley's inappropriate conduct in an email to Principal Sutterlin, stating: "I witnessed behavior that made me uncomfortable and I am reporting it. Mr. Daley had his hand around a boy student an[d] his hand went to his hip then his buttock where it stayed. This happened in the computer lab at 11:50 and I verbally reported it . . . and was asked to send email. Within minutes Mr. Daley spoke to another student who was sitting and his hand went through the chair hole and on the student's lower hip. I have

witnessed a lot of hugging and touching from teacher to male students but today the view was different as I was in the computer lab."

49.    The following week, teachers and staff came forward with multiple reports and complaints to the Defendant Holt Public Schools' administrators, including Human Resources ("HR") Director Kevin Badge, of Daley's long-running sexual misconduct, much of which Defendant Holt Public Schools already knew.

50.    The complaints and reports to Defendant Holt Public Schools administrators included the following:

    a.    In Spring 2013 or 2014, Daley had shown his underwear to students in his classroom.

    b.    In April 2015, Principal Sutterlin discovered Daley undressing in the boys' locker room, in the presence of male students undressing, which Sutterlin thought could result in accusations of sexual misconduct. Principal Sutterlin directed Daley to not undress with students, or watch students undress, in the locker room. It is clear the conduct put Principal Sutterlin on notice, as he expressly voiced his concerns to Daley.

    c.    During the 2016-2017 year, Mr. Allen, a teacher, observed Daley in the boys' locker room undressing with students after being told by the Principal not to do so.

    d.    A staff member reported observing Daley with a male junior high student sitting on his lap in the classroom.

    e.    Substitute teacher Ms. Fohey observed Daley with boys leaning against him and resting their buttocks on his legs. Daley's physical closeness to the boys struck her as odd.

f.    Teacher Eileen Gietzen found Daley holding a male student's hand when they were alone in the school's darkened computer lab.

g.    Paraprofessional Ms. Burton – who had reported Daley for inappropriately touching John Doe's buttocks and another boy in the computer lab – also told Defendant Holt Public Schools that Daley touched male students "a lot" in the classroom and hallways, Daley hugged primarily male students, and initiated hugs with the boys.

h.    Teacher Kasey Schaub reported observing Daley in the school hallways giving boys hugs, and rubbing their shoulders and backs. She informed Defendant Holt Public Schools that Daley, on social media, had posted a photograph of himself and six or seven male students at a movie theater.

i.    A female student had told teachers Schaub and Allen, regarding Daley, "I heard he likes little boys," and "We know what he is."

51.    After receiving these reports, Defendant Holt Public Schools did not "reach out to the victims and investigate," in order to "eliminate recurrence" of child sex abuse or to "support those who have been victimized," despite publicly describing this as an imperative in connection with its report regarding Nassar.

52.    Defendant Holt Public Schools did not interview or "reach out" to students witnesses or victims, including the boy who Daley had been seen inappropriately touching in the computer lab.

53.    Defendant Holt Public Schools did not inform students' parents that Daley had been observed with his hand resting on their son's buttocks or hip, or any other information concerning Daley's misconduct against students.

54.    Defendant Holt Public Schools did not inform any student's parents or guardians of the reports or Daley's misconduct.

55.    Defendant Holt Public Schools did not reach out to any other teachers, staff, or volunteers to ascertain whether they had observed Daley engage in conduct that caused them concern.

56.    Based upon information and belief, Defendant Holt Public Schools' Title IX Coordinator, Renee Sadler, did not oversee Defendant Holt Public Schools' response – or lack thereof – to these reports, or otherwise have any material involvement in the matter.

57.    On or about February 8, 2018, Human Resource Director Badge had a "coaching conversation" with Daley, during which Badge acknowledged, on behalf of Defendant Holt Public Schools, that Daley had been "observed working very closely with students, and having hands in areas that are very dangerous and concerning, hand resting on a student's butt or hip." Defendant Holt Public Schools described Daley as having "excessive contact" with students and admitted "this has the potential to bring claims of sexual misconduct."

58.    However, Defendant Holt Public Schools did not formally discipline Daley following the February 8, 2018 coaching conversation.

59.     Although Defendant Holt Public Schools' administrators and teachers are mandated reporters pursuant to MCL 722.621 *et. seq.*, Daley was not reported to Child Protective Services (CPS).

60.     Defendant Holt Public Schools did not increase its already largely nonexistent supervision of Daley after January 31, 2018.

61.     Defendant Holt Public Schools did not require Daley to keep his door unlocked or open, or to uncover the windows to his classroom.

62.     Defendant Holt Public Schools did not provide counseling for any of the students Daley touched, abused, or harassed, nor did it make any other attempt to remedy the sexual harassment and abuse Daley had inflicted upon Plaintiffs and other students.

63.     Daley retaliated against paraprofessional Ms. Burton, who had reported him to administrators, by kicking her out of his classroom and eliminating her ability to observe – and report – any of his continued sexual misconduct against students.

64.     Daley, unsupervised and likely emboldened by Defendant Holt Public Schools' demonstrated inaction, continued sexually abusing male students at Washington Woods, including Plaintiffs.

65.     Daley regularly sexually abused and harassed Plaintiffs and other male students through May 30, 2018, the day that students, during a discussion

with Principal Sutterlin on another matter, brought up Daley's sexual misconduct. The students reported that Daley had touched them that same day.

66.    On May 31, 2018, Defendant Holt Public Schools reported Daley to law enforcement.

67.    The Ingham County Sheriff's Office investigated Daley. In April 2019, Daley was arrested.

68.    In October 2019, a jury found Daley guilty of committing 18 counts of second-degree criminal sexual conduct against seven boys at Washington Woods, including Plaintiffs.

69.    On November 20, 2019, Daley was sentenced to serve 7-15 years in prison.

70.    Because of Defendant Holt Public Schools' actions and inaction, Plaintiffs suffered Daley's sexual abuse and harassment, witnessed the sexual abuse and harassment of other boys, and their educational environment was rendered unconscionably hostile; Plaintiffs have suffered, among other things, trauma, anxiety, fright, stress, and lost educational benefits and opportunities.

71.    Over two decades ago, the U.S. Supreme Court in *Gebser v. Lago*, 524 U.S. 274 (1998), determined that schools may be held liable in private Title IX actions when they are deliberately indifferent to teacher-against-student sexual misconduct and harassment, and stated:

*The number of reported cases involving sexual harassment of students in schools confirms that harassment unfortunately is an all too common aspect of the educational experience. No one questions that a student suffers extraordinary harm when subjected to sexual harassment and abuse by a teacher, and that the teacher's conduct is reprehensible and undermines the basic purposes of the educational system.*

72.     Nearly a quarter of a century ago, the Sixth Circuit in *Doe v. Claiborne County*, 103 F.3d 495 (6th Cir. 1996), notified all public schools, including Defendant Holt Public Schools, that teacher-against-student sexual abuse violates the student's Fourteenth Amendment Due Process rights, holding:

*Upon consideration, we hold that a schoolchild's right to personal security and to bodily integrity manifestly embraces the right to be free from sexual abuse at the hands of a public school employee. The substantive component of the Due Process Clause protects students against abusive governmental power as exercised by a school. To be sure, the magnitude of the liberty deprivation that sexual abuse inflicts upon the victim is an abuse of governmental power of the most fundamental sort; it is an unjustified intrusion that strips the very essence of personhood. If the "right to bodily integrity" means anything, it certainly encompasses the right not to be sexually assaulted under color of law. This conduct is so contrary to fundamental notions of liberty and so lacking of any redeeming social value, that no rational individual could believe that sexual abuse by a state actor is constitutionally permissible under the Due Process Clause.*

73.     In January 2001, the U.S. Department of Education Office for Civil Rights ("OCR") issued Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties ("2001 Guidance"), informing all U.S. schools receiving Federal financial assistance, including Defendant Holt Public Schools, that "[p]reventing and remedying

sexual harassment in schools is essential to ensuring a safe environment in which

students can learn." OCR stated:

> *Sexual harassment is unwelcome conduct of a sexual nature. Sexual harassment can include unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature. Sexual harassment of a student can deny or limit, on the basis of sex, the student's ability to participate in or to receive benefits, services, or opportunities in the school's program. Sexual harassment of students is, therefore, a form of sex discrimination prohibited by Title IX[.]*[2]

74.    OCR's 2001 Guidance notified schools that a hostile educational

environment can be created when students witness sexual harassment, stating:

> *A hostile environment can occur even if the harassment is not targeted specifically as the individual complainant. For example, if a student, group of students, or a teacher regularly directs sexual comments toward a particular student, a hostile environment may be created not only for the targeted student, but also for others who witness the conduct.*[3]

75.    OCR's 2001 Guidance informed schools that, when a teacher is the

harasser, students may not take action or even object, as students "may be

encouraged to believe that a teacher has absolute authority over the operation of

his or her classroom," and "may believe that any objections would be ineffective

in stopping the harassment or may fear that by making objections he or she will

be singled out for harassing comments or other retaliation."[4]

---

[2] *See Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, Title IX*, available at:
https://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf (last visited March 21, 2023).

[3] *Id.*

[4] *Id.*

76.     The 2001 Guidance also reminded schools they are responsible for taking prompt and effective action to stop and prevent the recurrence of a school employee's sexual harassment of a student. OCR stressed the importance of proper training for those in authority, stating:

> [S]chools need to ensure that employees are trained so that those with authority to address harassment know how to respond appropriately, and other responsible employees know that they are obligated to report harassment to appropriate school officials. Training for employees should include practical information about how to identify harassment and, as applicable, the person to whom it should be reported.[5]

77.     In 2004, the U.S. Department of Education issued *Educator Sexual Misconduct: A Synthesis of Existing Literature*, a study that determined nearly 10% of children in U.S. public schools are subjected to sexual misconduct by a school employee.[6]

78.     In January 2006, OCR issued Dear Colleague Letter – Sexual Harassment Issues, to U.S. public schools, including Defendant Holt Public Schools, stating, "[u]nfortunately, a significant number of students are still subjected to sexual harassment, which can interfere with a student's education as well as his or her emotional and physical well-being." OCR again reminded

---

[5] *Id.*

[6] Available at:
https://www2.ed.gov/rschstat/research/pubs/misconductreview/report.pdf (last visited March 21, 2023).

schools of their obligations "to take immediate and effective steps to end sexual harassment when it occurs, prevent its recurrence, and remedy its effects."[7]

79.    On April 4, 2011, OCR sent Dear Colleague Letter: Sexual Violence, to all U.S. public schools, including the Defendant, that issued a "call to action" to the nation's schools because of "deeply troubling" data regarding school-place sexual violence. OCR stated that "Schools should not wait for the conclusion of a criminal investigation or criminal proceeding to begin their own Title IX investigation and, if needed, must take immediate steps to protect the student in the educational setting."

80.    On April 24, 2015, OCR issued Dear Colleague Letter: Title IX Coordinators, and Title IX Resource Guide, to all U.S. public schools, including Defendant Holt Public Schools. OCR reminded schools of their obligation to designate at least one employee as a Title IX Coordinator who is responsible for coordinating the school's efforts to comply with and carry out the school's Title IX responsibilities, pursuant to 34 C.F.R. § 106.8(a). OCR stated, "In our enforcement work, OCR has found that some of the most egregious and harmful Title IX violations occur when a recipient fails to designate a Title IX coordinator or when

---

[7] *See Dear Colleague Letter* dated January 25, 2006, available at: https://www2.ed.gov/about/offices/list/ocr/letters/sexhar-2006.html (last visited March 21, 2023).

a Title IX coordinator has not been sufficiently trained or given the appropriate level of authority to oversee the recipient's compliance with Title IX."[8]

81.     The Michigan Department of Education issued <u>The Role of the Title IX Coordinator in Human Resources Activities</u>, to all Michigan schools, including Defendant Holt Public Schools, stating, "[a]lthough an educational agency's Human Resources personnel must take care to implement only policies and procedures that conform to Title IX requirements, the officially appointed Title IX coordinator has a responsibility to monitor agency human resources activities to assure compliance with the federal law."[9]

82.     On August 13, 2018, Defendant Holt Public Schools adopted Board Policy 3213 – Student Supervision and Welfare, which policy has remained in effect, and specifically provides in pertinent part:

> *Professional staff members because of their proximity to students are frequently confronted with situations which, if handled incorrectly, could result in liability to the District and personal liability to the professional staff member. It is the intent of the Board of Education to direct the preparation of guidelines that would minimize that possibility.*

---

[8] *See Dear Colleague Letter* dated January 7, 2015, available at: https://www2.ed.gov/about/offices/list/ocr/letters/colleague-el-201501.pdf (last visited March 21, 2023).

[9] *See The Role of the Title IX Coordinator in Human Resource Activities*, available at: https://www.michigan.gov/-/media/Project/Websites/mde/CTE/cte_spops/The_Role_of_the_Title_IX_Coordinator_in_Human_Resources_Activities_ADA.pdf?rev=8b8f1cdeaa2242b9b064ca7002f07f52#:~:text=officially%20appointed%20Title%20IX%20coordinator,compliance%20with%20the%20federal%20law (last visited March 21, 2023).

*The Superintendent shall maintain and enforce the following standards:*

A. *Each professional staff member shall maintain a standard of care for supervision, control, and protection of students commensurate with assigned duties and responsibilities.*

\* \* \*

D. *Each professional staff member shall immediately report to the principal any accident or safety hazard s/he detects.*

\* \* \*

G. *A professional staff member shall not associate or fraternize with students at any time in a manner which may give the appearance of impropriety, including, but not limited to, the creation or participation in any situation or activity which could be considered abusive or sexually suggestive or involve harmful substances such as illegal drugs, alcohol, or tobacco. Any sexual or other inappropriate conduct with a student by any staff member will subject the offender to potential criminal prosecution and disciplinary action by the Board up to and including termination of employment.*

*This provision should not be construed as precluding a professional staff member from associating with students in private for legitimate or proper reasons. However, dating, romantic and/or sexual relationships with students, regardless of their age and regardless of consent are absolutely prohibited, unless the staff member and student are legally married.*

H. *If a student approaches a staff member to seek advice or to ask questions regarding a personal problem related to sexual behavior, substance abuse, mental or physical health, and/or family relationships, the staff member may attempt to assist the student by facilitating contact with certified or licensed individuals in the District or community who specialize in the assessment, diagnosis, and treatment of the student's problem. Under no circumstances should a staff member attempt, unless properly licensed and authorized to do so, to counsel, assess, diagnose, or treat the student's problem or behavior, nor should such staff member inappropriately disclose personally identifiable information concerning the student to third persons not specifically authorized by law.*

\* \* \*

K. *Staff members shall only engage in electronic communication with students via email, texting, social media and/or online networking*

*media, such as Facebook, Twitter, YouTube, MySpace, Skype, blogs, etc., when such communication is directly related to curricular matters or co- curricular/extracurricular events or activities with prior approval of the principal.*

83.     On August 13, 2018, Defendant Holt Public Schools adopted Board Policy 5517 – Anti-Harassment, which policy has remained in, and specifically provides in pertinent part:

*It is the policy of the Board of Education to maintain an education and work environment that is free from all forms of unlawful harassment, including sexual harassment. This commitment applies to all School District operations, programs, and activities. All students, administrators, teachers, staff, and all other school personnel share responsibility for avoiding, discouraging, and reporting any form of unlawful harassment. This policy applies to unlawful conduct occurring on school property, or at another location if such conduct occurs during an activity sponsored by the Board.*

\* \* \*

*Prohibited acts that constitute sexual harassment under this policy may take a variety of forms. Examples of the kinds of conduct that may constitute sexual harassment include, but are not limited to:*

*A.     Unwelcome sexual propositions, invitations, solicitations, and flirtations.*

*B.     Unwanted physical and/or sexual contact.*

*C.     Threats or insinuations that a person's employment, wages, academic grade, promotion, classroom work or assignments, academic status, participation in athletics or extra-curricular programs, activities, or events, or other conditions of employment or education may be adversely affected by not submitting to sexual advances.*

*D.     Unwelcome verbal expressions, including graphic sexual commentaries about a person's body, dress, appearance, or sexual activities; the unwelcome use of sexually degrading language, profanity, jokes or innuendoes; unwelcome*

*suggestive or insulting sounds or whistles; obscene telephone calls.*

E.   *Sexually suggestive objects, pictures, graffiti, videos, posters, audio recordings or literature, placed in the work or educational environment, that may reasonably embarrass or offend individuals.*

F.   *Unwelcome and inappropriate touching, patting, or pinching; obscene gestures.*

G.   *Asking about, or telling about, sexual fantasies, sexual preferences, or sexual activities.*

H.   *Speculations about a person's sexual activities or sexual history, or remarks about one's own sexual activities or sexual history.*

I.   *Giving unwelcome personal gifts such as lingerie that suggests the desire for a romantic relationship.*

J.   *Leering or staring at someone in a sexual way, such as staring at a person's breasts, buttocks, or groin.*

K.   *A pattern of conduct, which can be subtle in nature, that has sexual overtones and is intended to create or has the effect of creating discomfort and/or humiliation to another.*

L.   *Inappropriate boundary invasions by a District employee or other adult member of the School District community into a student's personal space and personal life.*

M.   *Verbal, nonverbal or physical aggression, intimidation, or hostility based on sex or sex-stereotyping that does not involve conduct of a sexual nature.*

Case 1:23-cv-00293-JMB-PJG   ECF No. 1,  PageID.24   Filed 03/21/23   Page 24 of 54

84.     Upon information and belief, despite clear notice by the U.S. Supreme Court, Sixth Circuit, and U.S. Department of Education regarding the prevalence of school employee-against-student sexual harassment, the severe harm caused by such harassment, and the Defendant Holt Public Schools obligations to prevent and remediate the effects of this harassment, at all times relevant hereto Defendant Holt Public Schools failed to provide adequate training or education to administrators, teachers, staff, students, and parents regarding Title IX and school-employee sexual abuse of children.

85.     Upon information and belief, at all times relevant hereto, Defendant Holt Public Schools failed to provide training or education to administrators, teachers, staff, students, and parents on protecting students from sexual abuse, identifying child sexual harassment and abuse, recognizing grooming behaviors of sexual predators, interviewing victims and potential witnesses of abuse, investigating reports of child sexual abuse, remediating sexual harassment and abuse, and proper reporting of suspected sexual abuse to CPS and law enforcement.

86.     Upon information and belief, at all times relevant hereto, Defendant Holt Public Schools failed to provide training or education to administrators, teachers, staff, students, and parents on any then-existing written District policy

or protocol regarding school employee-against-student sexual harassment and/or Title IX.

87.     Upon information and belief, at all times relevant hereto, Defendant Holt Public Schools failed to designate a Title IX Coordinator who was properly trained and/or who was provided the appropriate level of authority to ensure that Defendant Holt Public Schools complied with its obligations after receiving notification and reports regarding the substantial likelihood that Daley would sexually harass male students, and even after receiving notifications and reports that he was, in fact, sexually abusing and harassing boys at Washington Woods, including Plaintiffs.

88.     Defendant Holt Public Schools' lack of training is evidenced by, among other things: failing to conduct a Title IX investigation of Daley's reported sexual misconduct against children at Washington Woods, even after notice of Daley undressing with students and other inappropriate behavior; not interviewing a single student about Daley, until students came forward on May 30, 2018; not taking any immediate steps to deter or prevent Daley from abusing and harassing students, such as by increasing monitoring of Daley or, at the very least, requiring he keep his classroom door open and windows unblocked; not reporting Daley to CPS or law enforcement prior to May 31, 2018; not informing or involving Defendant Holt Public Schools' Title IX Coordinator immediately

upon learning of Daley's inappropriate conduct; and not informing parents or guardians that Daley reportedly inappropriately touched their sons.

## Specific Allegations

89.     John 1 Doe met Daley through the running club when John 1 Doe was in fifth grade. The following year, during the 2017-2018 school year, John 1 Doe was a sixth-grade student and would interact with Patrick Daley while on school grounds, including in the hallways. During the 2017-2018 school year, Patrick Daley touched John 1 Doe's back while John1 Doe was working on math in the hallway, and Daley continued to run his hands down John 1 Doe's buttocks to the testicles, over the clothes. John 1 Doe said that Daley's touching made him feel uncomfortable because "it's not right," and he was afraid to tell anyone about what happened to him.

90.     John 2 Doe was a fifth-grade student during the 2017-2018 school year and would interact with Patrick Daley during "flooding period," at which time students would attend classes with teachers other than their own. Patrick Daley touched John 2 Doe on his upper thigh and moved his hand toward his penis until he physically pushed Daley's hand away and stated "please don't touch me." John 2 Doe said that the touching made him feel nervous, uncomfortable, and that he "just didn't want to be there anymore."

91.     John 3 Doe was a fifth-grade student that would attend Patrick Daley's switch class during the 2017-2018 school year. During that time, Patrick Daley was fond of John 3 Doe and would routinely touch his penis over his clothes, rub his upper thighs under his shorts, and rub his back under his shirt. This touching would happen nearly every day. John 3 Doe felt scared, nervous, and uncomfortable each time Daley would rub or touch him.

92.     John 4 Doe was a 5th grade student in Patrick Daley's class during the 2016-2017 school year and was mentored by Patrick Daley while he was in the 6th grade. During both years, John 4 Doe was on the running club, which Daley participated. On multiple occasions, Patrick Daley touched and rubbed John 4 Doe's penis and buttocks over his clothes. Furthermore, John 4 Doe was subjected to undressing with Daley in the locker room during running club.

93.     John 5 Doe was a fifth-grade student in Patrick Daley's class during the 2016-2017 school year. While interacting with John 5 Doe, Patrick Daley would rub his back, working his way down to his buttocks, on top of his underwear. John 5 Doe was touched on numerous occasions during his fifth-grade year.

94.     John 6 Doe was a fifth-grade student in Patrick Daley's switch class during the 2016-2017 school year. John 6 Doe was routinely touched by Daley on his upper thighs near his groin, genitals, and buttocks while a student in Daley's

27

classroom. Daley would touch his upper thigh near his underwear and his buttocks nearly every day.

## COUNT I
### *Violation of Title IX, 20 U.S.C. § 1681, et seq.*
### *Deliberate Indifference; Sexually Hostile Environment*

95.     Plaintiffs incorporate all preceding paragraphs into this Count by reference as though fully stated herein.

96.     Plaintiffs suffered Daley's sexual touching, abuse, and harassment, which is considered sex discrimination prohibited by Title IX.

97.     Plaintiffs witnessed Daley similarly sexually touch, abuse, and harass other male students, which also is considered sex discrimination prohibited by Title IX.

98.     Principal Sutterlin, HR Director Badge, and all other Washington Woods employees were "appropriate persons" within the meaning of Title IX.

99.     Defendant Holt Public Schools had actual knowledge that Daley posed a substantial risk of sexually harassing male students, including Plaintiffs, based on, among other things, the report to the former Washington Woods Principal that Daley showed his underwear to male students; Principal Sutterlin's observation in April 2015 of Daley undressing in the presence of male students in the locker room, which the Principal believed could constitute sexually inappropriate behavior; Principal Sutterlin subsequently viewing Daley with his

hand resting on or in the area of a boy's buttocks; and a report made by a student during the 2016-2017 academic year that Daley had tried to put his hand under the boy's shirt.

100.    Despite possessing this actual knowledge, Defendant Holt Public Schools failed to investigate or take any meaningful supervisory, disciplinary, or corrective action against Daley to prevent him from perpetrating sexual misconduct and harassment against Plaintiffs.

101.    Defendant Holt Public Schools had actual knowledge that Daley sexually abused and harassed Plaintiffs, specifically, when paraprofessional Ms. Burton informed Principal Sutterlin that Daley had rested his hand on a student's buttocks and hip. Based on this report, and the additional reports made to Principal Sutterlin and HR Director Badge during the following week, Defendant Holt Public Schools had actual notice that Daley had sexually abused and harassed Plaintiffs.

102.    The ongoing, systematic, pervasive abuse of students by Daley over the course of several years created a sexually hostile environment for students at Washington Woods Middle School.

103.    Defendant had actual knowledge of the hostile educational environment Plaintiffs suffered due to Daley's sexual discrimination, harassment, and abuse against them as well as that of other boys, which Plaintiffs witnessed.

104.    Despite possessing this actual knowledge, Defendant Holt Public Schools failed to investigate, take any meaningful disciplinary or corrective action against Daley to prevent his continued sexual misconduct against Plaintiffs and other students, or take any action that might remediate the sexual harassment and hostile education environment Plaintiffs suffered. Defendant's action and inaction were clearly unreasonable given the totality of the circumstances and constitute deliberate indifference.

105.    Through its actions and inaction, Defendant Holt Public Schools created a climate in which Daley's sexual harassment was tolerated, thus fostering Daley's continued sexual harassment and abuse against Plaintiffs and other boys at Washington Woods Middle School, which proximately caused severe injuries to Plaintiffs.

106.    As a result of Defendant Holt Public Schools' deliberate indifference, Plaintiffs were subjected to initial and additional sexual harassment by Daley.

107.    The sexual harassment, assault, abuse, and harassment Daley inflicted on Plaintiffs was severe, pervasive, and objectively offensive, and effectively barred students' access to educational opportunities and benefits.

108.    By its actions and inaction, Defendant Holt Public Schools acted with deliberate indifference toward the rights of Plaintiffs to an educational

environment free of teacher sexual harassment, thus materially impairing their ability to pursue their education in violation of Title IX.

109.    Specifically, Defendant violated Title IX by, inter alia:

a.    Ignoring complaints and reports regarding Daley's substantial risk of sexually abusing male students, including Plaintiffs, or being deliberately indifferent thereto;

b.    Ignoring the report that Daley had inappropriately touched students in the computer lab, or being deliberately indifferent thereto;

c.    Failing to investigate the many reports of Daley's sexual misconduct, or being deliberately indifferent thereto;

d.    Requiring Plaintiffs to protect themselves from sexual harassment and abuse perpetrated by Daley;

e.    Creating a climate that tolerated sexual harassment against Plaintiffs, or being deliberately indifferent thereto;

f.    Failing to discipline Daley for his sexual misconduct against male students, including Plaintiffs, or being deliberately indifferent thereto;

g.    Failing to increase supervision or monitoring of Daley after his sexual misconduct was reported, including those against Plaintiffs, or being deliberately indifferent thereto;

h.    Failing to report Daley to CPS or law enforcement, despite the fact that District administrators and teachers are mandated reporters;

i.    Failing to provide, offer, recommend, or coordinate adequate health, psychological, counseling, and

academic assistance and services to Plaintiffs after they were sexually harassed, assaulted, and violated by Daley, or being deliberately indifferent thereto; and

j.    Through other actions, inaction, and deliberate indifference.

110.    As a direct and proximate result of Defendant's action, inaction, and deliberate indifference, Plaintiffs sustained and continue to sustain injuries for which they are entitled to be compensated, including but not limited to:

a.    Past, present, and future physical and psychological pain, suffering and impairment;

b.    Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c.    Impaired educational capacity;

d.    Attorneys' fees and costs; and

e.    Such other and further relief as this Court deems just and proper.

## COUNT II
### *Violation of Plaintiff's Constitutional Rights, pursuant to 42 U.S.C. § 1983*
### *Failure to Train – Monell Liability*

111.    Plaintiffs incorporate all preceding paragraphs into this Count by reference as though fully stated herein.

112.    Children like Plaintiffs have a well-established right to be free from teacher sexual abuse, which violates a child's right to personal security and bodily integrity guaranteed by the Fourteenth Amendment to the U.S. Constitution.

113.    The U.S. Supreme Court holds, "we conclude that Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools," and that a plaintiff may bring causes of action under both Title IX and 42 U.S.C. § 1983 for unlawful sex discrimination.

114.    At all times relevant hereto, Defendant Holt Public Schools was a policymaker having a duty to train, and failed to properly or sufficiently train, administrators, teachers, staff, volunteers, students, and parents concerning school employee sexual misconduct against students and identifying, investigating, reporting, and stopping inappropriate conduct by teachers like Daley against students like Plaintiffs.

115.    At all times relevant hereto, Defendant Holt Public Schools was a policymaker having a duty to train, and failed to properly or sufficiently train, administrators, teachers, staff, volunteers, students, and parents regarding any written policies that would prevent or prohibit actions like those taken by Daley against Plaintiffs.

116.    Defendant Holt Public Schools failed to provide such training to administrators, teachers, staff, and students despite the obvious need for training.

117.    Numerous authorities, including the U.S. Supreme Court, Sixth Circuit, and U.S. Department of Education, made clear and gave notice to Defendant Holt Public Schools that school employees will confront student sexual

harassment and abuse with regularity, given the high predictability, recurrence, prevalence, and injurious nature of school employee-against-student sexual assault, abuse, and harassment in schools.

118.   Defendant Holt Public Schools failed to adequately train its administrators, teachers, staff, students, and parents, and thereby prohibit or discourage foreseen sexual misconduct, despite the clearly established and well-known dangers of sexual abuse, harassment, assault, and battery faced by students in U.S. public schools, and thereby was deliberately indifferent.

119.   Defendant Holt Public Schools failed to provide such training in light of foreseeable consequences that could result from a lack of instruction, including, but not limited to, teacher sexual harassment against students like Plaintiffs.

120.   Defendant Holt Public Schools' failure to train its administrators, teachers, staff, students, and parents effectively denied Plaintiffs' established Constitutional rights.

121.   Defendant Holt Public Schools' failure to train administrators, staff, and students was deliberate, reckless, and in callous indifference to Plaintiffs' established Constitutional rights.

122.   As a direct and proximate result of Defendant Holt Public Schools' actions, inaction, and deliberate indifference to Plaintiffs' established

Constitutional rights, Plaintiffs suffered, and continue to suffer, injuries including, without limitation, emotional distress, psychological trauma, and mortification.

123. As a direct and proximate result of Defendant Holt Public Schools' failure to adequately train employees regarding sexual harassment, abuse, and misconduct, Plaintiffs suffered, and continue to suffer, injuries for which they are entitled to be compensated, including but not limited to:

a. Past, present, and future physical and psychological pain, suffering and impairment;

b. Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

c. Impaired educational capacity;

d. Attorneys' fees and costs; and

e. Such other and further relief as this Court deems just and proper.

## COUNT III
### *Violation of Plaintiff's Constitutional Rights, pursuant to 42 U.S.C. § 1983*
### *Substantive Due Process: State-Created Danger*

124. Plaintiffs incorporate all preceding paragraphs into this Count by reference as though fully stated herein.

125. Plaintiffs' right to bodily integrity is an established and deeply-rooted fundamental right and liberty guaranteed by the substantive due process clause of the Fourteenth Amendment to the U.S. Constitution. *Doe v. Claiborne County*, 103 F.3d 495, 506 (6th Cir. 1996).

126. A schoolchild's right to personal security and to bodily integrity manifestly embraces the right to be free from sexual abuse at the hands of a public school employee. *Id.*

127. Defendant Holt Public Schools violated Plaintiffs' fundamental rights and liberties by taking discretionary, conscience-shocking, arbitrary executive action, without Plaintiffs' consent, that directly interfered with Plaintiffs' fundamental right to bodily integrity.

128. Defendant Holt Public Schools took the action of hiring Daley, assigning Daley as a teacher to children at Washington Woods Middle School, and made the decision to retain Daley after receiving notice of Daley's propensity to engage in sexual misconduct with students, as described in this Complaint.

129. Defendant Holt Public Schools knew that Daley engaged in behavior from which Holt Public Schools could infer that Daley posed a substantial risk of sexually abusing male students, including but not limited to Daley's undressing in the boys' locker room, which Principal Sutterlin expressly understood could result in claims of sexual misconduct.

130. Defendant Holt Public Schools' discretionary, conscience-shocking, and arbitrary executive actions included, inter alia, its post-January 31, 2018 decision to only have a "conversation" with Daley – who had reportedly touched students on intimate parts of their bodies, conduct which was criminal in nature –

but not supervise or monitor Daley's conduct at school with male students; not require that he keep his door unlocked or open, or windows unblocked, to increase visibility into his classroom; not interview any students; not reach out to Plaintiffs or any other victim; not inform any parents or guardians; not discipline or materially reprimand Daley; and not report to law enforcement or CPS, all which left Plaintiffs vulnerable to, and the subject of, Daley's continued sexual abuse and harassment at school, often behind the classroom's locked door.

131.    After January 31, 2018, Defendant Holt Public Schools again specifically acknowledged that Daley's touching of students, along with other reports of his excessive contact with male students, created a substantial risk that Daley would be accused of sexual misconduct.

132.    Defendant Holt Public Schools' actions and inactions were conscience-shocking in that it permitted Daley's reported sexual abuse against Plaintiffs and other students to continue.

133.    Defendant Holt Public Schools' actions and inactions infringed upon the decencies of civilized conduct, was offensive to human dignity, and interfered with rights implicated in the concept of ordered liberty.

134.    Defendant Holt Public Schools had time to fully consider the potential consequences of its conduct, and to make an unhurried judgment concerning Daley's fitness to be a teacher and to address misconduct that would result from

granting Daley unfettered access to Plaintiffs and other vulnerable minor students without supervision, monitoring, or restriction.

135.   Defendant Holt Public Schools knew of facts from which it could infer that Daley posed a substantial risk of serious harm to Plaintiffs and other students; it did infer that risk, as evidenced by Holt Public Schools' own description of Daley's contact with male students as "dangerous and concerning," with "the potential to bring claims of sexual misconduct;" and it acted with indifference toward Plaintiffs' fundamental rights and liberties.

136.   At all times relevant, Defendant Holt Public Schools acted with deliberate indifference and callous disregard to the substantial risk of foreseeable serious harm that Daley posed to Plaintiffs and other male students.

137.   As a direct and proximate result of Defendant's actions, inaction, deliberate indifference to, and violation of, Plaintiffs' established Constitutional rights, Plaintiffs suffered and continue to suffer injuries for which they are entitled to be compensated, including but not limited to:

     a.    Past, present, and future physical and psychological pain, suffering and impairment;

     b.    Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

     c.    Impaired educational capacity;

     d.    Attorneys' fees and costs; and

   e.  Such other and further relief as this Court deems just and proper.

**COUNT IV**
***Violation of Plaintiff's Constitutional Rights, pursuant to 42 U.S.C. § 1983***
***Equal Protection: Gender***

138. Plaintiffs incorporate all preceding paragraphs into this Count by reference as though fully stated herein.

139. The right to gender equal protection among students in public high schools guaranteed by the United States Constitution is a clearly established constitutional right that Defendant Holt Public Schools, its employees, and any reasonable person knew of or should have known. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir.1988).

140. The right to be free from teacher-student discrimination is well established. *Davis v Monroe County Bd. of Educ.*, 526 U.S. 629 (1999).

141. As students at Washington Woods Middle School, Plaintiffs were subjected to sexual assaults and harassment by teacher Patrick Daley.

142. The sexual assaults were perpetrated on Plaintiffs because they were male students.

143. The sexual assaults were perpetrated on male students, including Plaintiffs, for the sexual gratification of teacher Patrick Daley.

144. Despite receiving constructive and actual knowledge of Daley's ongoing sexual misconduct, Defendant Holt Public Schools failed to train

employees on identifying, reporting, and addressing teacher-student sexual misconduct.

145.  Defendant Holt Public Schools and its employees knowingly ignored the ongoing sexual misconduct of Daley perpetrated on male students.

146.  At all times relevant, Defendant Holt Public Schools and its employees decided not to take meaningful action to remedy the ongoing problem at Washington Woods Middle School regarding sexual assaults of student boys.

147.  Defendant Holt Public Schools' inaction to address ongoing acts of Daley's sexual misconduct after receiving actual and constructive knowledge of the assaults departs from clearly established school board policies and standard practices.

148.  Defendant Holt Public Schools' inaction to address ongoing acts of sexual misconduct after receiving actual and constructive knowledge of the misconduct was clearly unreasonable in light of known circumstances.

149.  Defendant Holt Public Schools' inaction to address ongoing acts of sexual misconduct after receiving actual and constructive knowledge of the misconduct amounts to deliberate indifference.

150.  As a direct and proximate result of Defendant Holt Public Schools' actions, inactions, and deliberate indifference to violation of Plaintiffs' established Constitutional rights, Plaintiffs' suffered, and continue to suffer, economic and

non-economic damages including, but not limited to, pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, impaired educational capacity, and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life.

## COUNT V
### *Violation of Elliot-Larsen Civil Rights Act, pursuant to MCL 37.2101, et seq.*
**Creating and Allowing Sexually Hostile Educational Environment**

151.    Plaintiffs incorporate all preceding paragraphs into this Count by reference as though fully stated herein.

152.    At all times relevant, Plaintiffs were male, minors, students, and members of a protected group under Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MCL §37.2101, *et seq.*

153.    The facilities operated by Defendant Holt Public Schools, including Washington Woods Middle School, were and are public services under ELCRA, MCL §37.2101, *et. seq.*

154.    Defendant Holt Public Schools, including Washington Woods Middle School, is a place of public accommodation, of public service, and an educational institution/environment as defined in ELCRA, MCL §37.2301, .2401, .2403, and .2404.

155.   At all times relevant, Defendant Holt Public Schools had a duty not to deny any individual, including Plaintiffs, the full and equal enjoyment of the goods, services, privileges, advantages, and accommodations of a place of public accommodation or public service, including a school and school services, because of religion, race, color, national origin, age, sex, or marital status.

156.   Plaintiffs are entitled to their established civil rights to be free from discrimination based on sex in public accommodations, in education, public services, and educational facilities. MCL §37.2102(1) and MCL §37.2101, *et seq.*

157.   Plaintiffs are entitled to be free from discrimination based on sex and free from sexual harassment, including to be free from unwanted verbal and physical conduct or communication of a sexual nature; and to be free from sexually harassing behaviors when they are minor students and when school and school officials are aware of said conduct.

158.   Plaintiffs have and had a right to personal security and to bodily integrity, including the right to be free from known and foreseeable school sexual harassment and abuse by teachers, including Daley.

159.   Schools are responsible for prompt and effective action to stop and prevent the foreseeable occurrence, reoccurrence, and/or continuation of sexual abuse of a student by a teacher or employee.

160.   Schools must ensure that employees are trained so that those with authority to address harassment know how to respond appropriately, including reporting obligations and how to identify suspected harassment and abuse.

161.   Defendant Holt Public Schools chose not to provide adequate training and education to staff and administrators regarding supervision and sexual abuse of children, despite the obvious need for training.

162.   There was inadequate training by Defendant Holt Public Schools regarding:

      a.    protecting students from sexual abuse,

      b.    identification of child sexual harassment and abuse,

      c.    interviewing witnesses and victims,

      d.    investigations into and reports of child sexual abuse,

      e.    remediation and preventing sexual harassment and abuse, or

      f.    proper reporting of suspected sexual abuse to CPS and law enforcement and cooperation.

163.   At all times relevant, Plaintiffs were subjected to offensive sexual communication, offensive sexual behaviors and conduct, and offensive and sexually manipulative actions on the basis of his sex by teacher Patrick Daley, which Defendant Holt Public Schools knew and should have known.

164.    Plaintiffs were subjected to sexual assaults, sexual harassment, and sexual misconduct, as described herein this Complaint, based upon their gender as a male.

165.    Defendant Holt Public Schools knew or should have known of the ongoing pervasive sexual assaults, sexual harassment, and sexual misconduct involving teacher Patrick Daley, yet failed to take any meaningful action to protect students of Washington Woods Middle School, including Plaintiffs.

166.    Defendant Holt Public Schools' acts and omissions constitute sexual harassment and violate Plaintiffs' rights under ELCRA, MCL §37.2103(h)(i)(ii)(iii) by subjecting Plaintiffs to sexual advances and sexual communication and assaults and other conduct, both physical and verbal, of a sexual nature.

167.    Defendant Holt Public Schools took no meaningful steps to protect Plaintiffs and other vulnerable students from sexual abuse by Daley.

168.    Defendant Holt Public Schools had actual knowledge and constructive knowledge of the sexual harassment, sexual abuse, sexual misconduct, and hostile educational environment at Washington Woods Middle School, including against Plaintiffs, yet failed to take corrective action in the form of reprimands, additional training, or supervision.

169.    Despite this actual and constructive knowledge, Defendant Holt Public Schools chose to disregard the totality of circumstances and facts and did

not reasonably and properly report to CPS/law enforcement, did not do a reasonable, full, complete, proper investigation, and chose not to take any meaningful disciplinary or corrective actions against Daley to stop the continued sexual abuse and harassment of Plaintiff and other male students at Washington Woods Middle School, which harassment and abuse then continued.

170.   Defendant Holt Public Schools' actions and inactions were clearly unreasonable in light of all the circumstances, which unreasonable conduct continued, and which conduct amounted to deliberate indifference to Plaintiffs' established rights and to the foreseeable harms continuing.

171.   Defendant Holt Public Schools' actions and inactions caused Plaintiffs to continue to be subjected to foreseeable harms and losses and sexual harassment during the time they were students at Washington Woods Middle School.

172.   Defendant Holt Public Schools' acts and omissions to Plaintiffs' sexual harassment violate their rights under the ELCRA, MCL §37.2103(h)(i)(ii)(iii) by subjecting Plaintiffs to illegal and non-consensual sexual harassment, sexual advances, sexual assaults, and other conduct, both verbal and physical, of a sexual nature, leading to the offensive, hostile, and pervasive school environment to which they were subjected.

173.   Defendant Holt Public Schools, as the entity and individuals responsible for administering the school's control over every aspect of the

educational environment, staff, and school life of its students, through the exercise of reasonable care, could have prevented and stopped the ongoing sexual misconduct and protected Plaintiffs and other students from ongoing and foreseeable harms and losses resulting from repeated sexual abuse.

174.    Based on the outlined facts, Defendant Holt Public Schools created a sexually hostile school environment, and they created and allowed an intimidating and abusive condition for students, including Plaintiffs, that was severe, pervasive, and contrary to their education and public rights and accommodations.

175.    Defendant Holt Public Schools' actions and inactions have deprived Plaintiffs of the full and equal enjoyment of the educational facilities and other identified public rights.

176.    Defendant Holt Public Schools' acts and omissions resulted in harm to Plaintiffs, including physical and emotional harm, with Plaintiffs being deprived of privileges and opportunities that should be available to students, and rights that should be theirs without the repeated and ongoing sexual harassment and conduct by Daley, in violation of the ELCRA, including violations of MCL §37.2103, *et. seq.*, and MCL §37.2701(a)(f).

177.    Defendant has violated the ELCRA and deprived Plaintiffs of their civil rights by, among other things:

      a.    Subjecting the minor students, because of their gender, to ongoing and continuous offensive conduct of a physical and sexual nature,

that had the purpose of and/or effect of denying them the full benefit of the educational program of the Holt Public Schools and full and equal access to the use and privileges of public accommodations, public services, and educational opportunities and without being subjected to repeated sexual misconduct as part of that special and trusting educational relationship.

b.    Choosing not to stop and fully report and investigate the ongoing and overall sexual harassment and abuse by Daley, despite direct knowledge and information not only of demonstrable suspicious and foreseeable behaviors, but also direct factual knowledge of ongoing sexual harassment and misconduct prevalent in public schools, and particularly at Washington Woods Middle School.

c.    By not fully and fairly investigating the ongoing sexual harassment and abuse by Daley and choosing not to protect the safety and security of student boys at Washington Woods Middle School.

d.    By not adequately training teachers, staff, and employees on identifying, reporting, addressing, and remedying sexual assaults, harassment, and misconduct occurring routinely by teacher Patrick Daley at Defendant Holt Public Schools and, in particular, at Washington Woods Middle School.

e.    By failing to establish and adhere to specific guidelines for supervision and conduct at Defendant Holt Public Schools and, in particular, in Daley's classrooms at Washington Woods Middle School.

178.    Plaintiffs were sexually harassed, subjected to ongoing and preventable sexual abuse by Daley, including physical offensive touching, and other sexual assaults and criminal conduct and communication as outlined throughout this Complaint.

179.    Plaintiffs were subjected to a sexually hostile and sexually inappropriate and sexually harassing school environment.

180.   Plaintiffs did not receive and were denied their full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations, and educational rights because of sexual abuse and harassment by Daley.

181.   Defendant Holt Public Schools had a duty to provide and protect Plaintiffs' civil rights as outlined throughout this Complaint, including their right to be free from sexual harassment as a minor students at Washington Woods Middle School, including the duty to respond, report, and prevent further harm when reports and factual information was known, continued to be reported, and could and should be investigated further to stop all of the sexually-offensive conduct.

182.   Defendant Holt Public Schools had a duty to respond and adequately and properly report and then investigate and prevent the ongoing sexual harassment and violations of Plaintiffs' civil rights, as outlined throughout this Complaint, and to do so fairly and thoroughly; and if not trained or qualified to do so, after reporting to the required department to make sure that someone who was qualified and trained did so to prevent ongoing and foreseeable harms to students, including Plaintiffs, and to protect all students from teacher-student sexual assaults.

183.   Despite their suspicions and actual knowledge of reported misconduct and suspicious and documented sexually-abusive behavior, including Daley undressing with boys in the locker room, Defendant Holt Public Schools chose not to report or investigate the misconduct, and failed to properly supervise Daley following the knowledge.

184.   Defendant Holt Public Schools had a duty to Plaintiffs and others to properly review and hire, supervise, and train employees to protect students in these types of situations.

185.   Defendant Holt Public Schools breached all of its applicable duties and violated the ELCRA as outlined throughout this Complaint.

186.   Defendant Holt Public Schools breached its duties and violated the ELCRA and such breaches were proximate causes of Plaintiffs' injuries, harms, and losses and those which they continues to sustain, for which they are entitled to be compensated.

187.   As a result of the Defendant Holt Public Schools' illegal and outrageous conduct and violations of ELCRA, Plaintiffs are also entitled to an award of attorney's fees under the ELCRA as well as exemplary damages.

188.   Defendant Holt Public Schools is liable under the ELCRA for the acts of their agents and others under their control because Washington Woods Middle School and its officials, teachers, and staff were aware of the hostile and abusive

environment created by Daley and failed to take prompt and adequate remedial action.

189.    As a direct and proximate result of Defendant Holt Public Schools' violations of ELCRA, as described in this Complaint, Plaintiffs have suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, impaired educational capacity, and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life.

## COUNT VI
### *Violation of Plaintiff's Civil Rights, pursuant to Mich. Const. 1963, Art. 1 § 17*
### *Michigan Constitutional Right to Due Process*

190.    Plaintiffs incorporate all preceding paragraphs into this Count by reference as though fully stated herein.

191.    At all times relevant, Plaintiffs' right to bodily integrity was protected under the Michigan Constitution.

192.    The acts and omissions of Defendant Holt Public Schools, as described herein this Complaint, are so egregious and outrageous that it may fairly be said to shock the contemporary conscience.

193.    The acts and omissions of Defendant Holt Public Schools, as described herein this Complaint, violated Plaintiffs' substantive right to bodily

integrity without due process, in violation of Michigan's Constitution, Article 1, Section 17.

194.   The Michigan Constitution has not delegated to another branch of government the obligation to enforce Article 1, Section 17, of the Michigan Constitution.

195.   The legislature or executive branch of the government have not provided an adequate remedy for a violation of Michigan's Constitution, Article 1, Section 17.

196.   Michigan recognizes a private cause of action with a money damages remedy for state constitutional torts, unless the Michigan Constitution has delegated to another branch of government the obligation to enforce the constitutional right at issue, or another branch of government has provided a remedy that the state Supreme Court considers adequate. *Bauserman v. Unemployment Ins. Agency*, No. 160813, 2022 WL 2965921 (Mich. July 26, 2022).

197.   For a legislative remedy for a state constitutional tort to be adequate, and thereby take the place of a remedy from the Courts, the legislature's remedy must be at least as protective of Plaintiffs' right to bodily integrity and due process; and must include any remedy necessary to address the harm caused. *Id.*

198.   The standard of liability in a state constitutional-damages claim is not limited to direct standard of liability.

199.    Citizens who have been deprived of a constitutional right deserve to seek redress through the courts, regardless of whether their harm was inflicted pursuant to state custom or policy.

200.    The purpose of Michigan's Declaration of Rights is to ensure that the violation of constitutional rights is never permitted by anyone who might be invested under the Michigan Constitution with the powers of the state.

201.    Defendant Holt Public Schools is liable to Plaintiffs for the harms caused by violating the recognized rights, including the rights to due process and bodily integrity, that the Michigan Constitution guarantees to Plaintiffs.

202.    As a direct and proximate result of the Defendants' actions and inactions, and deliberate indifference to Plaintiffs' established constitutional rights, Plaintiffs have suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, impaired educational capacity, and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life.

## **Request for Relief**

Plaintiffs respectfully request this Court issue a judgment in favor of Plaintiffs and against Defendant Holt Public Schools, awarding Plaintiffs

compensatory damages in an amount to be established by jury at trial, equitable

relief, reasonable attorneys' fees and costs, legal interest, and such other relief as

the Court may deem just and proper under the circumstances.

Respectfully submitted,

**THE SINAS DRAMIS LAW FIRM**

Attorneys for Plaintiffs

By:   /s/ Stephen H. Sinas
      _____
      Stephen H. Sinas (P71039)
      3380 Pine Tree Road
      Lansing, MI 48911
      (517) 394-7500

## <u>JURY DEMAND</u>

**NOW COME** Plaintiffs, by and through their attorneys, *the Sinas Dramis Law Firm*, and hereby respectfully demands a trial by jury in the above-captioned action.

Respectfully submitted,

**THE SINAS DRAMIS LAW FIRM**

Attorneys for Plaintiffs

By:    <u>/s/ Stephen H. Sinas</u>
Stephen H. Sinas (P71039)
3380 Pine Tree Road
Lansing, MI 48911
(517) 394-7500